AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California



| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. **4 - 13 - 7 1 4 15** |
| Madhan Santhanam, | ) | |
| | ) | OAKLAND VENUE |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___May 16, 2011 & June 14, 2012___ in the county of ___Alameda___ in the ___Northern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 911 | False claims of United States citizenship |

FILED

NOV 1 4 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

PENALTIES:
Maximum 3 years' imprisonment
Maximum $250,000 fine
Maximum 3 years of supervised release
$100 special assessment

This criminal complaint is based on these facts:

See attached AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

☑ Continued on the attached sheet.

APPROVED AS TO FORM:

AUSA RODNEY VILLAZOR

_____
*Complainant's signature*

Richard Lin, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11/14/13__

_____
*Judge's signature*

City and state: ___Oakland, California___

Hon. Kandis A. Westmore
*Printed name and title*



**AFFIDAVIT OF SPECIAL AGENT RICHARD LIN IN SUPPORT OF A SEARCH WARRANT FOR MAAN SYSTEMS INCORPORATED, INC. LOCATED AT 39899 BALENTINE DRIVE, SUITE 200, ROOM 20, NEWARK, CALIFORNIA 94560**

I, Richard Lin, being duly sworn, depose and state as follows:

## I.   INTRODUCTION

1.  This Affidavit is submitted in support of criminal complaint charging Madhan **SANTHANAM**, the MAAN Systems Incorporated's President and CEO, with violations of federal law, namely the Specified Federal Offenses identified herein, and in support of an application for a warrant to search the offices of MAAN Systems Incorporated located at 39899 Balentine Drive, Suite 200, Room 20, Newark California 94560 (the "**Subject Premises**"). The property to be searched is described in detail in Attachment A and the items to be seized are described in Attachment B of this application.

2.  Information that I have collected in the course of this investigation establishes probable cause to believe that within the **Subject Premises** there exists evidence, fruits and/or instrumentalities of violations of 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 911 (false claim to U.S. citizenship), and 18 U.S.C. § 1546 (visa fraud) (collective the "Specified Federal Offenses").

3.  Information that I have collected in the course of this investigation also establishes probable cause to believe that **SANTHANAM** has, among other things, made false claims of U.S. citizenship, in violation of 18 U.S.C. § 911.

4.  In sum, MAAN Systems Incorporated claims to provide software and technical support to various Fortune 500 and other corporate clients largely by obtaining specialty occupation ("H-1B") work visas for and placing high-technology workers from India at either MAAN Systems or its alleged corporate clients. However, MAAN Systems, at the direction of **SANTHANAM** and through its corporate officers and workers doing business at the **Subject Premises**, has been

1

fraudulently obtaining these "H-1B" visas from the Department of Homeland Security (DHS). The fraudulent scheme entails, in substance, the submission of forged or altered documentation in support of the "H-1B" visa applications to the DHS thereby fraudulently inducing DHS to issue the "H-1B" work visas to MAAN Systems Incorporated's foreign workers. DHS would not have issued the "H-1B" visas if it had been known at the time of various visa applications that the supporting documentation were forged and altered by MAAN Systems.

5. The facts set forth in this Affidavit are known to me as a result of my participation in this investigation, from information provided to me by other law enforcement officers and from records, documents, and other evidence obtained during this investigation. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the criminal complaint and requested search warrant, I have not included each and every fact known to me concerning this investigation, but rather those facts which I believe are necessary to establish probable cause for the criminal complaint and to search the **Subject Premises**. Everything set forth in this Affidavit is true to the best of my knowledge and belief.

## II.    AFFIANT BACKGROUND

6. I am a Special Agent of the Diplomatic Security Service, which is an agency of the United States State Department and I have been so employed for over 11 years. I am presently assigned to the Document and Benefit Fraud Task Force at DHS. This task force investigates sophisticated immigration frauds in the San Francisco Bay Area, and as such, I have received and continue to receive specialized training and instruction from State Department officers who issue entry visas to foreigners overseas and DHS officers who issue employment documents to foreigners already inside of the United States. I am empowered under 22 U.S.C. § 2709 to investigate visa frauds, as well as to apply for and serve federal arrest and search warrants.

2

### III.   SPECIALTY OCCUPATION H-1B WORK VISAS

#### A.   H-1B Work Visa

7.  Foreigners wishing to work in the United States must apply for a work visa through DHS which include in pertinent part, "H-1B" specialty occupation work visas. "H-1B" visas are reserved for specialty occupation foreign workers, namely computer programmers, scientists, and engineers who hold at least a bachelor's degree. "H-1B" visas were designed so industries could fill skill and labor gaps with foreign workers, and they have strict issuance requirements, lengthy processing times, fees, wage and labor promises, certifications, and quotas.

#### B.   Labor Condition Application (LCA)

8.  If a U.S. company wishes to sponsor a foreign special occupation worker on an "H-1B" visa, the U.S. company, acting as a Petitioner, begins the process by submitting a Labor Condition Application ("LCA") for Nonimmigrant Workers (ETA Form 9035) to the Department of Labor ("DOL") in Chicago, Illinois.  A Petitioner can submit the LCA electronically through the iCERT Portal system and will receive a courtesy e-mail confirming receipt of the LCA submission.

9.  The DOL then adjudicates the LCA and determines if the American company qualifies to hire foreign workers.  If and when the application is approved, the DOL electronically notifies the Petitioner and DHS via e-mail.  Once approved, all LCAs are required to be maintained onsite for inspection by immigration and law enforcement officials.  Moreover, a copy of the LCA must be given to the H-1B worker no later than when he/she reports to work.  Based on my training and experience, petitioning companies typically save electronic copies of the LCA on their computers or other electronic storage devices.

## C.    The I-129 Petition

10. After the LCA is approved, the Petitioner then prepares a Petition for a Nonimmigrant Worker
("I-129") for every foreign worker they wish to employ and submits the I-129 to a DHS
processing center.  The I-129 is a 35-page document that is publicly available in a fillable
portable document format (PDF) on the U.S. Citizenship and Immigration Service (USCIS)
website located at www.uscis.gov.  This PDF enables the Petitioner to enter data directly onto
the form and save it electronically on a computer or other electronic storage device for record
keeping and printing for submission to DHS.  Among other things, the I-129 requires the name
and biographical data of the proposed foreign worker, the proposed wage to be paid, and the
address where the foreign worker will be working.

11. The I-129 requires the Petitioner to "certify, under penalty of perjury under the laws of the
United States of America, that this petition and the evidence submitted with it is all true and
correct.  If filing this on behalf of an organization, I certify that I am empowered to do so by that
organization."  In the accompanying instructions for the I-129, the Petitioner is advised that "[b]y
signing this form, you have stated under penalty of perjury (28 U.S.C. 1746) that all information
and documentation submitted with this form is true and correct."  The instructions also add that
"[i]f you knowingly and willfully falsify or conceal a material fact or submit a false document
with this petition ... you will face severe penalties provided by law and may be subject to
criminal prosecution."  Thus, when a Petitioner signs the Form I-129, it assumes the legal
responsibility for the truth and accuracy of all information submitted.  If an I-129 is not signed,
it will not be considered properly filed.

4

12. Petitioners have the option to e-file the I-129 to DHS and will receive a receipt indicating the service center to which the I-129 was routed. DHS then reserves the right to verify any information submitted, including contact via written correspondence, telephone and "unannounced physical site inspections of residences and places of employment and interviews."

13. When the I-129 is submitted to DHS, DHS reviews all of the listed and supplemental documentation and adjudicates it. If qualified, DHS then approves "H-1B" visa/status to the proposed foreign worker and directs the worker to pick up their visa at an American Consulate or mails them the documentation if they are already in the United States.

### D.    End Client Worksites

14. In pertinent part, should the Petitioner wish to place their proposed foreign worker at an end client worksite, the U.S. employer/Petitioner can voluntarily submit their contracts, end client letters, or other documentation along with the I-129s to DHS. One of MAAN Systems Incorporated's fraudulent schemes involves the placement of proposed foreign workers at end client worksites, such as Walmart and Western Digital, when no such contracts actually exist.

15. If a Petitioner is proposing to place the foreign worker at an end client worksite, it is common to provide supporting documentation to verify proof of employment. Although supporting documentation is not required in the H-1B process, its absence will usually trigger USCIS to issue a request for evidence (RFE), which can significantly delay the adjudication process. RFEs occur when USCIS is unable to determine eligibility on the evidence provided. In order to avoid delays in processing, most Petitioners will submit as much supporting documentation as possible along with the I-129 H-1B petition.

16. Examples of supporting documentation from the Petitioner include, in relevant part, (1) end client letters; (2) vendor to subcontractor purchase orders/contracts; and (3) company support letters to USCIS.

a. End client letters are letters submitted by the client or a third-party worksite on behalf of the foreign worker and, in general, include the name of the foreign worker, his/her job title, the project(s) he/she is assigned to, the name of the foreign worker's onsite supervisor, and how long the foreign worker's services will be required.

b. Vendor to subcontractor agreements are purchase orders/contracts that clarify the business/contractual relationship(s) between the end client, vendor and any subcontractors.

c. Company support letters are written by the petitioning company to USCIS on behalf of the foreign worker and identify the foreign worker by name, job duties, education and skills, and establish the contractual relationship(s) between the end client, vendor and any subcontractors.

**E.    Public Access File**

17. In pertinent part, the Petitioner is required to maintain a Public Access File which is to be available for public examination at the employer's principal place of business.  Under 20 C.F.R. § 655.760, the Public Access File contains "a filed labor condition application and necessary supporting documentation available for public examination at the employer's principal place of business in the U.S. or at the place of employment within one working day after the date on which the labor condition application is filed with DOL."   Specifically, the following documentation is deemed necessary for public examination: (1) the LCA; (2) documentation of wage rate; (3) documentation explaining how actual wage set; (4) documentation of determining "prevailing wage"; (5) union/employee notification; and (6) a summary of benefits offered to U.S. workers in same occupational classification as H-1B worker, among other documentation.

18. DHS regularly conducts audits of petitioning companies and their end clients in order to ensure compliance with H-1B regulations. Based on the aforementioned regulations, DHS normally also requests to see: a list of pay stubs for all H-1B employees; tax filings for H-1B employees and the company itself; company organizational charts; contracts between the petitioning company, subcontractors, vendors and end client; information on job description and actual projects that the H-1B employee is working on.

### IV.    APPLICABLE LAW

19. 18 U.S.C. § 1001 states, in part, that whoever in any matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation; shall be fined and imprisoned for not more than five years. The Department of State is part of the executive branch of the United States Government.

20. 18 U.S.C. § 911 states, in part, that whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both.

21. 18 U.S.C. § 1546 states, in part, that whoever knowingly makes under oath, or as permitted under penalty of perjury knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact shall be fined under this title, imprisoned not more than 5 years, or both.

## V.     THE SUBJECT PREMISES

22. According to www.maansystemsinc.com, the address written on petitions filed by MAAN Systems Incorporated and on-site inspections described herein, the **Subject Premises** is located at 39899 Balentine Drive, Suite 200, Newark, CA 94560. According to the lease information provided by Bay Business Centers and law enforcement surveillance described herein of the **Subject Premises**, MAAN Systems Incorporated is specifically located in Room 20 of Suite 200.

23. On May 29, 2013, I issued a subpoena to Bay Business Centers requesting lease information for the **Subject Premises**. Review of the lease information revealed the following. The **Subject Premises** are actually located in Room 20 of Suite 200 of the **Subject Premises;** that the maximum occupancy for Room 20 is for two people; that only two computers with internet access are authorized per the lease; and that **SANTHANAM** is listed as the leasee. That same day, I walked into the publicly accessible Suite 200, conducted surveillance of Room 20, *i.e.*, the **Subject Premises** and confirmed with the receptionist that MAAN Systems is located only in Room 20; that other companies occupy the remaining offices; and that the receptionist, conference room, and kitchen are shared, communal spaces.

24. In May of 2013, based on supporting documents submitted in H-1B visa petitions by MAAN Systems Incorporated for its alleged "e-ntelligent® Applications Manager" product, Immigration Officer William Higdon located on the internet an identical product brochure named "Manage Engine®", which is owned by the "Z*** Corporation." The Powerpoint slides for "e-ntelligent® Applications Manager" that were submitted by MAAN Systems as supporting documentation for H-1B visa petitions are identical to the slides for "Manage Engine®" in every aspect except for

the substitution of the company and product names, specifically from Manage Engine® and Z*** Corporation to MAAN Systems and e-ntelligent Applications Manger, respectively.

25. On June 6, 2013 and, again on June 20, 2013, I contacted R.S., the President of Z*** Corporation and S.S., Z*** Corporation's Intellectual Property Rights lawyer, and was informed that "Manage Engine" is a Z*** Corporation product; that Z*** Corporation holds the trademarks for the terms "Manage Engine" and "Applications Manager"; that the Powerpoint slides submitted by MAAN Systems are copies of Z*** Corporation's "Manage Engine®" product; and that Z*** Corporation did not license MAAN Systems to utilize, resell, or repackage any of its products as its own.

26. On June 11, 2013, using the search terms "Manage Engine", "Applications Manager" and "e-ntelligent", I conducted an internet search of the U.S. Patent and Trademark Office (USPTO) website www.uspto.gov and confirmed that the Z*** Corporation owns the trademarks for "Manage Engine®" and "Applications Manager®", which were registered on July 31, 2007 and March 29, 2011 respectively. There is no record of the alleged trademarked term "e-ntelligent."

27. On July 10, 2013, Immigration Officer (IO) Ana Madrigal and Investigative Analyst (IA) Jessica Hubler conducted a scheduled site visit and interview of **SANTHANAM** at the **Subject Premises**. Due to the ® symbol shown on brochures for "e-ntelligent", IO Madrigal and IA Hubler asked **SANTHANAM** if the product has been patented or trademarked. **SANTHANAM** stated no since it is still a work in progress.

28. On July 10, 2013, IO Ana Madrigal and IA Jessica Hubler conducted a scheduled site visit to the **Subject Premises** and spoke with **SANTHANAM**. **SANTHANAM** confirmed that MAAN Systems Incorporated is located in room 20 of Suite 200 at the **Subject Premises**. He also confirmed that MAAN Systems has access to the communal spaces within Suite 200. During the

site visit, both IO Madrigal and IA Hubler both observed MAAN Systems employees working in those spaces.

29. On November 6, 2013, IA Hubler advised outside legal counsel for MAAN Systems Incorporated of her intention to do an on-site visit at the **Subject Premises.** IA Hubler specifically requested access to the Public Access File as well as documentation regarding the e-ntelligent H-1B applications. The following day, outside legal counsel confirmed that he and **SANTHANAM** "would be happy to meet with you" and proposed meeting between 9:00 a.m. and 11:00 a.m. at the **Subject Premises** on November 18, 2013.

## VI.    FACTS ESTABLISHING PROBABLE CAUSE

30. Starting in May of 2013, this investigation has revealed that, **SANTHANAM,** through MAAN Systems Incorporated, has submitted 60 fraudulent H-1B visa applications to DHS to obtain H-1B visas for their foreign workers. Specifically, MAAN Systems Incorporated, acting as a Petitioner for various foreign workers and later either placing them at end client worksites or on the fake in-house "e-ntelligent® Applications Manager" project, is doing business at the **Subject Premises** and, from there, has submitted supporting documents for the fake project "e-ntelligent® Applications Manager" as well as forged/altered end client letters and/or end client contracts and agreements to DHS. The first of these 60 fraudulent H1-B visa applications was submitted to DHS on September 11, 2009. As a result of the fraud, DHS has issued numerous H-1B visas to these foreign workers.

31. From approximately May of 2013, to the present, IA Hubler and I reviewed MAAN Systems Incorporated's specialty occupation (H-1B) work visa records on file at DHS, including their submitted LCAs, I-129s and supporting documentation. The review disclosed specialty occupation (H-1B) work visa records for 47 foreign workers whose names are listed in

Attachment B for the non-existent product "e-ntelligent® Applications Manager" and 13 records

for client or third-party worksites for a total of 60 suspected fraudulent H-1B visa applications.

The recipients of these 60 H-1B visas are listed in Attachment B, Subpart K.

32. The review and subsequent investigation revealed that at least 60 fraudulent H-1B applications

have been submitted, signed and sworn under penalty of perjury by **SANTHANAM**, through

MAAN Systems Incorporated doing business at the **Subject Premises,** in the following cases:

**A.      Forty-Seven False I-129 Applications for "e-ntelligent® Applications Manager"**

33. To date, 47 separate H-1B petitions filed by MAAN Systems Incorporated are not for client or

third-party worksites, but for an in-house, proprietary product named "e-ntelligent® Applications

Manager." According to supporting documentation submitted by MAAN Systems to DHS and

from its website www.maansystemsinc.com, "e-ntelligent® Applications Manager" is a software

program that enables companies that rely on Web Applications to monitor what MAAN Systems

refers to as "e-infrastructure." In these petitions, MAAN Systems alleges that the H-1B foreign

workers will be working at the **Subject Premises** on the product "e-ntelligent®" and not at a

client or third-party worksite. MAAN Systems also submitted to DHS photographs of the

**Subject Premises** in order to demonstrate the company's ability to host such a large number of

employees. These photographs contain pictures of a conference room, kitchen, receptionist area,

and a floor plan showing 37 individual offices.

34. From September 11, 2009 to June 4, 2013, **SANTHANAM**, with the listed address at the

**Subject Premises** and under penalty of perjury, signed and submitted 47 I-129s and supporting

documentation for different beneficiaries. The records included company brochures, Powerpoint

slides of the fake "e-ntelligent® Applications Manager" product, website screenshots for the fake

"e-ntelligent® Applications Manager" product, and nine employment offer letters signed by

11

MAAN Systems Senior Manager J.K. for beneficiaries B.S., K.M., S.P., B.S., S.N., S.N., S.G., S.S., and K.V.

35. On July 10, 2013, IO Madrigal and IA Hubler interviewed **SANTHANAM**. He admitted to being the sole signatory on all I-129 Petitions submitted by MAAN Systems.

36. On August 13, 2013, William Parrish, USCIS Immigration Services Officer – Adjudications, informed me via email that "when the Petitioner signs the Form I-129, it assumes the legal responsibility for the truth and accuracy of all information submitted in support of the petition. In this case [MAAN Systems], the Petitioner has violated this provision by submitting falsified documents of an in-house project and location…Therefore, the Service would deny cases which involved falsified documents of an in-house project and location."

**B.     Six False I-129 Applications for Western Digital**

37. From December 1, 2011 to April 27, 2012, **SANTHANAM**, with the listed address at the **Subject Premises** and under penalty of perjury, signed and submitted six I-129s and supporting documentation for P.T., A.B., S.K., N.Y., B.D., and S.T. The records included Western Digital Consulting Agreements and Purchase Orders, which in sum purported that the six beneficiaries would be working as computer consultants for Western Digital. The records also included six employment offer letters signed by MAAN Systems Senior Manager Jatinder Kaur for the above named beneficiaries.

38. On June 8, 2013, Western Digital confirmed that the purchase orders submitted by Madhan **SANTHANAM** for B.D., N.Y., P.T., A.B. S.T. and S.K. are all forgeries and with the exception of S.T., none of the foreign workers had ever worked at or for Western Digital.

39. From December 1, 2011 to April 27, 2012, DHS issued "H-1B" visas for P.T., A.B., S.K., N.Y., B.D., and S.T.

C.     **Seven False I-129 Applications for Walmart**

40. From November 18, 2010 to March 3, 2011, **SANTHANAM**, with the listed address at the **Subject Premises** and under penalty of perjury, signed and submitted seven I-129s and supporting documentation for K.S., R.G., B.S., S.C., J.K., B.P., and R.S.T. The records included a Walmart Purchase Order signed by Walmart employee R.N., which in sum purported that K.S., R.G., B.S., S.C., J.K., B.P., and R.S.T. were to be placed as computer consultants for Walmart. The records also included four employment offer letters signed by MAAN Systems Senior Manager Jatinder Kaur for B.S., S.C., B.P. and R.S.T

41. The Purchase Orders sent by **SANTHANAM** are forgeries.   On June 7, 2013, Walmart confirmed that they have no record of ever having conducted business with MAAN Systems Incorporated and that the signature on the Purchase Orders for K.S., R.G., B.S., S.C., J.K., B.P., and R.S.T. are signed by someone named "William Hughes," who is not a Walmart employee.

42. From November 18, 2010 to April 13, 2012, DHS issued "H-1B" visas to K.S., R.G., B.S., S.C., J.K., B.P., and R.S.T.

**D.  Two False Claims to U.S. Citizenship in Violation of 18 U.S.C. § 911**

43. In reviewing DHS records, I found copies of MAAN Systems Incorporated's 2009 and 2010 U.S. Corporate Income Tax Returns, Form 1120, which were submitted by **SANTHANAM** as supporting documentation to DHS for H-1B visa petitions.  In those 2009 and 2010 tax returns, submitted respectively on or about May 16, 2011 and on or about June 14, 2012, Madhan **SANTHANAM** falsely claimed under penalty of perjury that he is a U.S. citizen when in actuality, he is a citizen of the United Kingdom and legally present in the U.S. as a non-immigrant, "H-1B" visa holder.

13

44. On July 10, 2013, during IO Madrigal and IA Hubler's interview of **SANTHANAM**, he acknowledged to being a citizen of the United Kingdom; originally entering the U.S. on a "H-1B" visa; and being the sole owner of MAAN Systems Incorporated.

45. DHS and State Department records confirm that Madhan **SANTHANAM** is currently a citizen of the United Kingdom and present in the U.S. on a "H-1B" visa, petitioned by a company named Riverbed Technologies.

46. 8 Code of Federal Regulations (CFR) 274a.12(b)(9), states in pertinent part that "a temporary worker or trainee (H-1, H-2A, H-2B, or H-3)...may be employed only by the petitioner through whom the status was obtained." Therefore individuals in the U.S. on H-1B visas are only permitted to work for their petitioning company. From my training and experience, Madhan **SANTHANAM** would have wanted to conceal from DHS the fact that he is a "H-1B" beneficiary since he is not authorized to work as an employee of MAAN Systems. Based on a June 17, 2013 advisory opinion by USCIS, as the President of MAAN Systems, **SANTHANAM** is considered an employee of MAAN Systems.

**E.     DHS Issuance of H-1B Visas**

47. I know from my training and experience and from the facts listed above that DHS would not have issued the aforementioned "H-1B" specialty occupation work visas had it been known that their submitted various purchase orders, contracts and supporting documentation were counterfeit.

48. Based on my training and experience and conversations with DHS officers and as stated in paragraph 41, "H-1B" visa holders are only authorized to work for the specific employer that filed the approved I-129 on his/her behalf. On August 7, 2007, DHS denied **SANTHANAM**'s "H-1B" visa petition to work at MAAN Systems. This petition was filed under penalty of

14

perjury by A.B., a H-1B visa holder that was also fraudulently petitioned by **SANTHANAM** to work on the fake Western Digital project.

49. Based on my training and experience and as stated in paragraph 41, **SANTHANAM** would have wanted to conceal from DHS the fact that he is in the U.S. on a H-1B visa since he is not authorized to work at MAAN Systems as the President and CEO.

## VII.    EVIDENCE LIKELY TO BE FOUND AT PREMISES TO BE SEARCHED

### A.    Documents and Records

50. Based on my training and experience, and based on my consultations with other DHS agents who are experienced in investigation of fraud offenses, particularly the Specified Federal Offenses, and based on my investigation in this case, I know that persons engaged in fraudulent businesses often maintain records of their transactions similar to the record-keeping practices of legitimate businesses. Even after the fraud is completed, persons engaged in fraudulent schemes routinely maintain documentary records over long periods of time, even years, to memorialize past transactions, payments by victims, records of accounts receivable, and names, addresses and phone numbers of victims/investors. These records are routinely maintained on paper, such as business and personal ledgers, diaries, calendars, memoranda, investor lists, and telephone address books. These records are commonly kept at the business location where the fraudulent activity was conducted.

51. In this investigation, I know from my training, experience and discussions with colleagues and supervisors that MAAN Systems Incorporated will have employee or personnel files for most, if not all of the individuals listed on Attachment B. Like many businesses with foreign workers, their records should contain employment applications, wage and salary information, contracts, employment offers, purchase orders, Social Security forms, copies and originals of government

documents related to immigration filings, and invoices to and from vendors, customers, clients, as well as company organization charts.

52. I also know, based on my training and experience, that it is likely that MAAN Systems Incorporated charged the employees listed in Attachment B a fee or other form of charge for MAAN Systems Incorporated to petition USCIS for H-1B visas. Therefore, I believe there are likely ledgers, copies of checks and/or actual wire transfer instructions, wire receipts, and/or bank account records showing the wiring or transfer of money via check or wire from prime and sub-contracting companies to MAAN Systems Incorporated; from MAAN Systems Incorporated to MAAN Systems Incorporated employees, as listed in Attachment B; and from MAAN Systems Incorporated officers to other MAAN Systems Incorporated officers and accounts. These contracts and bank records should reveal how much the end client is paying for the employee, in comparison to how much the employee actually earns. This will demonstrate how much revenue MAAN Systems Incorporated has earned from its fraudulent activities.

**B.      Computers**

53. Records, such as the submission and receipt of the LCA and I-129 described above, are also maintained in electronic form on computers and external hard drives/storage devices. Electronic information can remain on computer storage media, such as internal and external hard drives, pocket drives, thumb drives, CDs, DVDs, diskettes, and flash drives, for an indefinite period of time. Even when a computer user attempts to delete records from a computer storage medium, the records may still exist and be recovered through computer forensic techniques. Computer files may also be easily moved from computer to computer, using direct wire connections or through the use of storage media such as floppy diskettes, CDs, DVDs, diskettes, thumb drives, pocket drives, flash drives and USB drives.

54. Accordingly, I have consulted with computer forensic examiners for DHS

    a. Computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct respects: (1) the items themselves may be instrumentalities, fruits, and/or evidence of crime; and/or (2) items may have been used to collect and store information about crimes (in the form of electronic data). Thus, Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are: (1) instrumentalities, fruits and/or evidence of crime; and/or (2) storage devices for information about crimes;

    b. Based on forensic examiners' knowledge, training, and experience, searching and seizing information from computers often requires agents to seize most of all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

(i) Volume. Computer storage devices can store the equivalent of thousands of pages of information;

(ii) Concealment. A suspect may try to conceal evidence; he or she might also store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime;

(iii) Technical. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.

For example, on site and laboratory analysis by a qualified computer specialist is often required in order to properly retrieve and analyze electronically stored (computer) data, document and authenticate the data, and prevent the loss of the data either from accidental or deliberate programmed destruction. In many cases, the evidentiary data can be backed up to government owned computer data storage devices at the site of the search. However, there are circumstances that may necessitate the seizure and removal of the entire computer system and peripheral devices to a secure laboratory setting in order to analyze and extract the evidence. To effect accurate and complete analysis may require seizure of all computer equipment and peripherals which may be interdependent, the software to operate the computer system, data security devices (including passwords) and related instruction manuals which contain directions concerning the operation of the computer system and software programs. This is true because the peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the computer expert be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence. In addition, the computer expert needs the relevant system software (operating systems, interfaces, and hardware drivers) and any application software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

55. I also know from my training and experience that copies and originals of contracts and end client letters are emailed from vendors and end clients to MAAN Systems Incorporated as attachments in PDF form, which are then saved on MAAN Systems Incorporated computers and other electronic storage devices. In addition, immigration forms such as the I-129 and Labor Condition Application are generally obtained online and in a fillable PDF format, which is then filled out by the petitioner. These copies are most likely saved on MAAN Systems Incorporated computers and other electronic storage devices in order to respond to audits and investigations or inquiries from U.S. immigration and law enforcement officials. I know from my training and experience, that copies and originals of the contracts and end client letters can be manipulated by a computer program such as Adobe Photoshop, Microsoft Paint, or through the use of typewriters, word processors, copy machines, and scanners, all of which enable the cutting and pasting of signature blocks, dates, names, and any other information that may need to be manipulated on a contract, form, letter, or other supporting documentation to be submitted to immigration officials. In order to manipulate these items, these documents are likely created, altered, and/or saved in a PDF or other similar format on MAAN Systems Incorporated computers and other electronic storage devices. Once manipulated and saved, these documents can then be printed and submitted to DHS. In my experience, copies of these documents are maintained in the office, in both paper form (in drawers and filing cabinets) and electronic form (found on computers).

56. I also know from my training and experience that the people who profit and benefit from foreign worker visa frauds like this one are ordinarily the corporate officers who direct other officers or workers, by e-mail messages to wittingly or unwittingly prepare or submit false statements to DHS. I know from my training and experience that there likely exists copies or e-mail messages

or typed or handwritten notes in hard copy and electronic format stored on hard drives and other storage devices amongst and between these listed corporate officers and the foreign workers listed on Attachment B in the employee or personnel files and throughout the premises, which will reveal who directed and instructed the preparation and submission of the LCA ETA Form 9035s, I-129s and counterfeit supporting documentation like third-party contracts, end-client letters, company support letters, and vendor to subcontractor purchase orders/contracts to DHS.

57. Based on the above facts and circumstances and information, permission is requested to seize all computer systems and peripherals if necessary even though there may be unrelated information stored on the computer system(s). This unrelated data will not be used and will be separated (to the extent possible) from the evidentiary data and preserved. The search and seizure of the computer equipment will be done in conformance with the three page protocol attached to this affidavit as Attachment C, attached and incorporated into this affidavit by reference.

## VIII. SEALING REQUEST

58. I respectfully request that this Affidavit and Application for Search Warrant be sealed until the execution of the search warrant. Disclosure of the search warrant affidavit at this time would seriously jeopardize the ongoing investigation as the targets would not otherwise be aware of this warrant or that their activities are necessarily the subject of an ongoing criminal investigation. Disclosure at this time would provide the target with the opportunity to destroy evidence, change patterns of behavior, notify other confederates, or allow confederates to flee. Further, the investigation in this matter is continuing, and disclosing the contents of the Affidavit prior to execution will likely preclude or impede the agents and investigators working on this matter from investigating new criminal activity or leads.

## IX. CONCLUSION

59. Based on the foregoing, I believe that there is probable cause that there is evidence of the Specified Federal Offenses located in the **Subject Premises**. Therefore, I respectfully request that the Court issue a warrant authorizing the search of the **Subject Premises**.

Richard Lin
Special Agent
Diplomatic Security Service
U.S. Department of State
San Francisco Field Office

SUBSCRIBED AND SWORN BEFORE ME
On November 14th, 2013

The Honorable Kandis A. Westmore
US Magistrate Judge
Northern District of California

21